# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH TOWNSEND, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Criminal Action No. 12-125-3 <br> (Related to Civil Action No. 18-215) <br><br> Judge Cathy Bissoon |

## **MEMORANDUM ORDER**

Pending before the Court is Petitioner Kenneth Townsend's Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255 (Doc. 353) filed at Criminal Action No. 12-125-1 and at Civil Action No. 18-215. Petitioner has also filed an "Informal Memorandum in Support" of his motion (Doc. 354). The Government has filed a Response to the Motion and Memorandum (Doc. 359). Petitioner contends in his motion that he was denied effective assistance of counsel under the Sixth Amendment of the Constitution based on his trial counsel's failure in negotiating a favorable plea deal, and trial counsel's failure to file a motion to suppress intercepted communications obtained by way of a wiretap order. After the Government filed its Response, Petitioner filed a Motion for Discovery (Doc. 361). The Government filed a Response (Doc. 363), to which Petitioner filed a Reply (Doc. 364). For the reasons stated herein, the Court will deny Petitioner's motion for discovery and his Section 2255 motion.

## BACKGROUND

The Court writes exclusively for the parties and therefore sets forth only those facts that are necessary to the disposition of Petitioner's motions.

On May 15, 2012, Petitioner Kenneth Townsend was charged in three counts of a four-count Indictment with: (1) conspiracy to possess with the intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count One); (2) possession with the intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Three); and (3) possession with the intent to distribute more than 28 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count Four).

The charges arose out of an investigation by the Federal Bureau of Investigation ("FBI"), in coordination with other federal and local law enforcement agencies, focused on heroin trafficking in the East Hills section of Pittsburgh, Pennsylvania. In particular, the primary targets of the investigation were members of the East Hills Bloods gang. The investigation initially involved surveillance of low-level heroin sellers on the streets, but eventually required the use of Title III intercepts of communications on numerous target telephones.

Pursuant to intercepted communications, agents learned that Damon Boyd and Carter Gaston were trafficking in heroin and cocaine. Shane Countryman, an Allegheny County Deputy Sheriff and member of the task force investigating the East Hills Bloods gang, participated in the investigation and reviewed the intercepted communications. In January 2012, Countryman and fellow law enforcement officers conducted surveillance of Boyd and Gaston, and they learned that Boyd and Gaston intended to purchase narcotics. That surveillance revealed that Boyd and Gaston went to the street of Kenneth Townsend's residence. Approximately two hours after arriving on Townsend's street, surveillance observed Boyd and Gaston leaving Townsend's residence. In addition, surveillance observed Townsend outside of his residence and law enforcement officials were able to identify him.

After Boyd's meeting with Townsend, Title III intercepts indicated that Boyd had cocaine available for sale. Agents surmised that Boyd had obtained cocaine while at Townsend's residence. Boyd and Townsend arranged to meet again, according to intercepted communications, and the FBI and Countryman believed this meeting would also be to conduct a drug transaction. Accordingly, on February 1, 2012, surveillance of Townsend's residence was again initiated.

The surveillance revealed that Boyd and Gaston traveled to Townsend's residence in a Ford Expedition registered to Boyd and another individual. Approximately two hours after Boyd and Gaston arrived at Townsend's residence, they drove from the residence in the Expedition. The agents recognized that this was the same sequence of events that happened when Boyd went to Townsend's residence in January, after which Boyd indicated he had cocaine available for sale. The agents therefore had reason to believe that Boyd and Gaston were traveling with cocaine. Law enforcement officials at the scene knew that Boyd did not have a valid driver's license and had an active warrant for his arrest. The officers conducted a stop of Boyd's vehicle in order to arrest him.

Local law enforcement arrested Boyd pursuant to the arrest warrant. Prior to towing the vehicle, pursuant to normal procedures to inventory contents of vehicles, Countryman conducted a search of the areas immediately accessible to Boyd and Gaston. During the search, Countryman noticed that the radio was not secured and he pulled slightly on the radio. When he did so, the dashboard moved creating a crease. When Countryman placed his fingers within the crease, the dashboard fell off revealing a "trap" where Boyd and Gaston stored their stash of crack cocaine. Concealed within the trap were plastic bags containing crack cocaine still wet from processing.

Based on the information set forth above, local law enforcement obtained a search warrant authorizing them to search Townsend's residence. Within Townsend's residence, law enforcement officials found what amounted to a small crack cocaine processing operation, including cocaine, baking powder, strainers, digital scales and other indicia associated with processing cocaine into crack cocaine. Townsend was arrested and charged, along with codefendants Boyd and Gaston.

Prior to trial, Townsend's counsel filed two motions to suppress evidence pertaining to the search of his residence, both of which were denied. Following a jury trial in April 2014, Townsend was found guilty of Counts Three and Four. The jury could not reach a verdict with respect to the conspiracy count at Count One, and Count One was later dismissed.

The Probation Office and the Court determined that Townsend was a Career Offender under Section 4B1.1 of the United States Sentencing Guidelines as a result of two prior convictions: (i) possession with intent to deliver cocaine, and (ii) fleeing and attempting to elude a police officer. Thus, Townsend faced a potential Guideline sentence of 360 months to Life. The Court granted Townsend's request for a downward variance and sentenced him to 200 months imprisonment for each count, to run concurrently.

Townsend timely appealed both his conviction and sentence. The United States Court of Appeals for the Third Circuit affirmed his conviction, but, in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), concluded that his prior conviction for eluding a police officer no longer qualified as a crime of violence. United States v. Townsend, 638 F. App'x 172, 178 (3d Cir. 2015). Because Townsend no longer qualified as a career criminal, his sentence was vacated and remanded to the District Court for resentencing.

Without the career offender designation, his guideline sentence range became 108 to 135 months. At sentencing, the Court increased the base offense level for obstruction of justice, making the guideline sentence range 135 to 168 months. The Court noted that at the initial sentencing hearing it had varied downward from the minimum guideline range of 360 months, and the fact that Townsend was no longer considered a career offender did not change what the Court believed to be an appropriate sentence. Accordingly, the Court varied upward from the sentence range and again sentenced Townsend to 200 months imprisonment.

Townsend appealed the sentence, which was affirmed by the United States Court of Appeals for the Third Circuit. United States v. Townsend, 664 F. App'x 202 (3d Cir. 2016). Thereafter, Petitioner timely filed the instant motion to vacate raising issues of ineffectiveness of his trial counsel.

**ANALYSIS**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). As a remedy, the court must "vacate and set the judgment aside and . . . discharge the prisoner or resentence him [or her] or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the

rudimentary demands of fair procedure." United States v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

## I. Need for Evidentiary Hearing

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motion, files, and records of the case show conclusively that the movant is not entitled to relief. See 28 U.S.C. § 2255(b); United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005); United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994). Thus, if the record conclusively negates the factual predicates asserted in support of a Section 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).

The Court finds no need for an evidentiary hearing here, as the record conclusively establishes that Petitioner is not entitled to the relief sought in the petition. See 28 U.S.C. § 2255. Accordingly, the Court denies Petitioner's motion for an evidentiary hearing.

## II. Legal Standards

Petitioner argues that he was denied effective assistance of counsel under the Sixth Amendment to the Constitution. A "petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 210 (3d Cir. 2012) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. . . . The challenger's burden is to show that counsel made errors so

6

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Ross, 672 F.3d at 210 (quoting Harrington v. Richter, 562 U.S. 86, 104 (2011)). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Hinton v. Alabama, 571 U.S. 273, 274 (2014) (quoting Strickland, 466 U.S. at 690). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." Strickland, 466 U.S. at 681. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." United States v. Loughery, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting Strickland, 466 U.S. at 689).

With respect to prejudice, a petitioner must "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Hinton, 571 U.S. at 275 (quoting Strickland, 466 U.S. at 694); see also Ross, 672 F.3d at 210 (quoting Richter, 131 S. Ct. at 787).

### III. Petitioner's Ineffective Assistance Claims

Petitioner claims his counsel was ineffective based on the following allegations: (1) counsel failed to negotiate a favorable plea agreement; and (2) counsel failed to file a motion to suppress intercepted communications obtained by the Government pursuant to wiretap applications. The Court will consider each of these allegations in turn.

## A. Ground 1: Failure to Negotiate Favorable Plea Deal

"During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler v. Cooper, 566 U.S. 156, 162 (2012); Missouri v. Frye, 566 U.S. 134, 138 (2012) (extending the right to effective assistance of counsel to consideration of plea offers that lapse or are rejected).

> In the context of claims regarding the assistance of counsel at the plea bargaining stage where a defendant eventually proceeded to trial, a habeas petitioner must establish three components in order to demonstrate prejudice. He must prove that a plea offer was extended by the government, and that a reasonable probability exists that he would have accepted the plea offer and the court would have approved the agreement.

Enright v. United States, 347 F. Supp. 2d 159, 165 (D.N.J. 2004). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 566 U.S. at 168. "If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." Id.

Petitioner contends that, during pretrial plea bargaining, the prosecutor offered a sentence of 15 years imprisonment in exchange for Petitioner pleading guilty and not going to trial. He claims his trial counsel advised him not to accept the plea offer, as counsel believed the Government would not be able to prove that Petitioner was part of a conspiracy, and counsel predicted he would not be deemed to be a career offender, and thus trial counsel believed Petitioner would receive a lesser sentence if he went to trial.

Petitioner acknowledges that his counsel was correct on the conspiracy count, as Petitioner was not convicted of that count. In addition, although counsel was initially wrong about Petitioner's career offender status, it was eventually determined that he no longer qualified as a career criminal. Petitioner's sentence was vacated, and he was resentenced without the

8

career offender designation, albeit to the same term of imprisonment. Petitioner claims he was prejudiced because he received a sentence greater than the alleged plea offer of 15 years. Petitioner maintains that he suffered prejudice because the upward departure for obstruction of justice was based on information produced at trial, which presumably would not have been available had Petitioner pleaded guilty in lieu of a trial.

Petitioner also filed a Motion for Discovery, in which he seeks documents related to any plea offers, draft plea agreements and plea negotiations.[1] In support of his motion, he attached a letter from the Government indicating to counsel that because trial was about to commence it was formally withdrawing all "previous draft plea agreements and plea offers," and because trial was imminent the government would not consent to a one-point reduction. (Doc. 361, 6.) In its Response opposing the motion, the Government attached an unsigned printout from the electronic case file in which the Government stated to counsel as follows:

> Please be advised that if your client, Kenneth Townsend, pleads guilty to the charges against him at Criminal No. 12-125 in an "open" plea (i.e., no written plea agreement with the United States), the government will seek dismissal of the Information filed pursuant to 21 U.S.C. § 851 that increases the mandatory and maximum penalties for your client. This Letter sets forth the only obligation of the government in connection with this matter, and there are no other agreements, promises, terms or conditions, express or implied.

---

[1] Petitioner also seeks information related to the wiretap investigation and poses interrogatories for the Prosecutor to answer. Rule 6(a) governing proceedings under Section 2255, provides that a "judge may, for good cause, authorize…discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." A petitioner seeking discovery under § 2255 must show good cause "by setting forth specific allegations which, if fully developed, would entitle him or her to the writ." Lee v. Glunt, 667 F.3d 397, 404 (3d Cir. 2012); see also Bracy v. Gramley, 520 U.S. 899, 908-09 (1997); Harris v. Nelson, 394 U.S. 286, 300 (1969). While the allegations must be specific, they need not be "supported by solid evidence." Bracy, 520 U.S. at 908. Upon a showing of good cause a petitioner is entitled to discovery, but the court maintains discretion as to the scope. Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011). The material provided by Petitioner and the Government is sufficient to present a developed record to resolve the motion. Petitioner has not otherwise shown sufficient good cause and therefore the Court will deny the motion for discovery.

(Doc. 363-1.)

In Reply, Petitioner attached the first page of a letter his counsel sent to the prosecutor, in which he characterizes the Government's "unyielding offer that Mr. Townsend go down for 15 years" as excessive. (Doc. 364-1.) He then recites the reasons why he believes the offer is excessive, including the weakness of the case, the lack of aggravating factors and his client's background, and notes that "Mr. Townsend [has] zero incentive" to accept the offer. (Id.) He also noted the Government's indication it would not consent to a third point for acceptance of responsibility, commenting that in light of an offer for 15 years imprisonment, he did not see how "acceptance of responsibility" would help his client. (Id.) In other words, if his client agreed to 15 years imprisonment, "acceptance of responsibility" could not alter that sentence. Thus, counsel acknowledged that if his client pleaded guilty pursuant to an offer of 15 years imprisonment, he recognized that the Government would not agree to any further reduction of that sentence.

Defendants have "no right to be offered a plea . . . nor a federal right that the judge accept it." Frye, 566 U.S. at 148 (citing Weatherford v. Bursey, 429 U.S. 545, 561 (1977) (defendants have "no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial"). Accordingly, "counsel cannot be ineffective for failing to negotiate a plea if there was no plea offer made by the United States to be negotiated." United States v. Terry, No. 14-CV-1006, 2015 WL 4255527, at *5–6 (W.D. Pa. July 14, 2015). Here, the evidence supports that the Government made an informal offer of a 15-year sentence in exchange for Petitioner's plea of guilty to all counts of the Indictment (with no acceptance of responsibility credit), but that there was no written plea agreement.

Petitioner's claim fails because he cannot show that he suffered prejudice. "Strickland's inquiry into whether 'the result of the proceeding would have been different,' requires looking . . . at . . . whether he would have accepted the offer to plead pursuant to the terms earlier proposed." Frye, 566 U.S. at 148 (quoting Hill v. Lockhart, 474 U.S. 668, 694 (1985)). The evidence shows only that Petitioner's offer was an open plea to all counts with no written plea agreement and no consent to an acceptance of responsibility credit.

In contrast, Petitioner has not presented evidence demonstrating a reasonable probability that the Government would have offered a 15-year sentence in exchange for a plea to the conspiracy count *only*. Petitioner not only believed, as did his counsel, that he would not be convicted of the conspiracy count, he maintained that the drugs identified in the conspiracy count comprised the only instance that he ever dealt with drugs. The Government knew this not to be true based on the intercepted communications and surveillance of Townsend's residence. Thus, it is not reasonable to believe that the Government would have offered the plea deal Petitioner claims he was offered.

Next, Petitioner does not present evidence to show that he would have accepted a plea offer to all Counts or to an offer that would have required him to plead guilty to a conspiracy count that in the end he was not convicted of at trial. Petitioner also does not allege that he disagreed with trial counsel's assessment of the evidence regarding the conspiracy count. The Court therefore concludes that Petitioner cannot show a reasonable probability that he would have accepted a plea offer of 15 years imprisonment if he had to plead guilty either to all counts as supported by the evidence or to solely to the conspiracy count.

Finally, trial counsel believed that Petitioner would not have been convicted (and in fact was not) of conspiracy, and thus trial counsel's advice to reject the plea offer is an informed

11

decision based on a reasonable strategic judgment. Strickland, 466 U.S. at 681. Counsel reiterated his reasons in writing to the Government in which counsel explained that Petitioner had no incentive to accept an offer of a 15-year sentence. Thus, we cannot conclude that trial counsel's performance amounts to ineffectiveness of counsel as his alleged advice was not unsound and the possible benefit was speculative. United States v. Odinga, 2007 WL 2461705, at *3–4 (E.D. Pa. Aug.23, 2007) (petitioner required to show that he was "offered an actual plea offer about which counsel provided insufficient advice"). Such a conclusion would be improperly based on hindsight that the decision to forego the alleged plea offer proved not to have best served Petitioner. Loughery, 908 F.2d at 1018.

Petitioner therefore cannot sufficiently undermine confidence in the sentence he received as he cannot demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hinton, 134 S.Ct. at 1089. Petitioner's claim of ineffectiveness depends on speculation that the Court declines to credit. United States v. Brooks, No. 10-20078-JWL, 2016 WL 1170947, at *4 (D. Kan. Mar. 23, 2016) (relief cannot be based on mere speculation that something different might have occurred). Accordingly, for the reasons stated above, Petitioner's claim of ineffectiveness for failing to negotiate a favorable plea deal will be denied.

### B. Ground 2: Failure to Seek Suppression of Intercepted Communications

Next, Petitioner claims that counsel was ineffective for failing to raise a challenge to the intercepted communications obtained from the wiretap orders. Petitioner offers no details to support his argument that his counsel's conduct in not filing a motion to suppress was inefficient or that he suffered prejudice. Significantly, the Court did hold hearings on a codefendant's motion challenging the legality of the wiretap orders. The motion was denied as the Court

determined that the Applications for wiretaps were lawful.  Had trial counsel sought to suppress the intercepted communications obtained from the wiretaps, his motion would have been unsuccessful, and therefore his decision not to file such a motion cannot show ineffectiveness.

In addition, Petitioner would not be able to establish prejudice even if counsel's conduct was ineffective and the intercepted communications involving Petitioner were suppressed.  The primary evidence leading to the arrest of Petitioner was obtained from the lawful stop and search of his codefendant Boyd's vehicle.  The drugs found in that vehicle led to the search of Petitioner's residence.  Petitioner did not have standing to contest the search of Boyd's vehicle.  The evidence would have been more than sufficient for the jury to find Petitioner guilty.  Accordingly, Petitioner cannot show that he was prejudiced by an alleged failure to suppress the intercepted communications.

### C. Certificate of Appealability

No certificate of appealability should issue in this case.  A court should issue a certificate of appealability where a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  A petitioner meets this burden by showing that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court finds that jurists of reason would not find it debatable whether Petitioner states a valid claim for the denial of a constitutional right and jurists of reason would not find it debatable whether the Court is correct in concluding that the petition does not present any claims upon which habeas relief may be granted.  Therefore, the Court will deny a certificate of appealability.

Having found no merit to Petitioner's claims of ineffectiveness of counsel, Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 will be denied.

* * *

Accordingly, IT IS ORDERED that:

Petitioner's Motion for Discovery is **DENIED** (Doc. 361) and Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 353) is **DENIED**. A Certificate of Appealability is **DENIED**.

IT IS SO ORDERED.


October 4, 2018
       s\Cathy Bissoon
       Cathy Bissoon
       United States District Judge


cc (via ECF email notification):

All Counsel of Record


cc (via First-Class U.S. Mail):

Kenneth Townsend
No. 33585-068
F.C.I. Loretto
P.O. BOX 1000
LORETTO, PA 15940